## Henry Bull *vs.* John N. A. Griswold.

Gen. Stat. R. I. cap. 41, §§ 2, 3 and 7, provide :

"All taxes assessed against any person in any town for either personal or real estate shall constitute a lien on his real estate therein.

"All taxes assessed against the owner of any real estate shall constitute a lien on such real estate in any town for the space of two years after the assessment; and if such real estate be not aliened, then until the same is collected.

"If any person is taxed for several parcels of real estate, or for personal and real estate in the same tax, the whole of such person's tax may be collected, either out of the real or personal estate, or any part thereof; *provided* that no land aliened shall be sold, if the person taxed have other sufficient property."

These provisions being in force, a tax was assessed against A., who owned three tracts of realty in one town. After the assessment one tract was sold and subsequently the other two. A.'s tax not being paid, levy was made upon one of the last two tracts for A.'s whole tax, whereupon the purchaser paid the tax under protest, and filed a bill in equity for contribution against the purchaser of the first tract sold.

On demurrer to the bill :

*Held*, that the demurrer must be sustained, as the purchaser of the last two tracts sold took them subject to the tax lien from which the first tract sold was freed by the prior alienation, as the other tracts were sufficient to pay the tax.

Bill in Equity for contribution and to establish a lien. On demurrer to the bill.

*Providence, October* 28, 1882. Durfee, C. J. This bill sets forth that on September 2, 1878, one William G. Peckham, of Newport, was the owner in fee of two parcels of land in Newport, to wit, the Commercial Wharf estate and an estate on the Bliss Road, and of an estate partly in Newport and partly in Middletown ; that on said September 2 the city of Newport assessed a tax of $394.11 on the two Newport estates, assessing the Wharf estate for $306.24 and the estate on the Bliss Road for $87.87 ; that on December 7, 1878, the Wharf estate was sold at sheriff's sale and conveyed to the defendant, who has ever since been seized and possessed of it ; that on April 20, 1879, the two other estates were sold at sheriff's sale and conveyed to the complainant ; that afterwards, the taxes remaining unpaid and the defendant refusing to join the complainant in paying them, the tax collector lev-

ied on the estate on the Bliss Road for the whole tax and offered it for sale, whereupon, to prevent a sale, the complainant paid the whole tax under protest; and that the defendant refuses to pay the proportion of the tax due from him on account of the Wharf estate. The bill prays that the defendant may be decreed to pay the proportion of the tax and expenses belonging to the Wharf estate, and that said proportion may be declared to be a lien on said estate, and for general relief. The defendant demurs generally to the bill. We think the demurrer is good. The case must be decided under Gen. Stat. R. I. cap. 41, §§ 2, 3, and 7. The sections are as follows, to wit:

" SECT. 2. All taxes assessed against any person in any town for either personal or real estate shall constitute a lien on his real estate therein.

" SECT. 3. All taxes assessed against the owner of any real estate shall constitute a lien on such real estate in any town for the space of two years after the assessment; and if such real estate be not aliened, then until the same is collected.

" SECT. 7. If any person is taxed for several parcels of real estate, or for personal and real estate in the same tax, the whole of such person's tax may be collected, either out of the real or personal estate, or any part thereof; *provided* that no land aliened shall be sold, if the person taxed have other sufficient property."

We think it is plain that under these provisions the real estate of any person in any town is subject to a lien, and may be sold for all the taxes assessed against him in the town, for two years after the assessment, even though in the mean while the estate may have been aliened, and that, if not aliened, it continues subject to the lien, and liable to be sold for the taxes until they are collected. It is also plain that if, during the first two years that follow the assessment, a part of the real estate be aliened, the remainder, while retained by the original owner, becomes primarily, and, if sufficient, solely liable to be sold to satisfy the lien. Now, applying these conclusions to the case at bar, it follows that if, after the Wharf estate was sold to the defendant, the remainder of the real property had remained without alienation in William G. Peckham, it alone would have been liable for the tax, being incontestably sufficient to pay it. It was aliened, however, before it was

levied on by the tax collector, and the statute does not expressly say that after alienation it shall continue to be primarily liable. The question is, did it not continue so liable as a matter of legal inference, or at least as a matter of equity, between the purchasers ?

It is not alleged that either the Wharf estate or the estate on the Bliss Road was sold in pursuance of any attachment on original writ or mesne process, and it must therefore be presumed that the complainant's title was posterior to the defendant's, the sale to him being of later date. It seems to follow as a legitimate consequence, that the complainant took the estate as William G. Peckham held it, and that, inasmuch as William G. Peckham held it primarily charged for the taxes, the complainant must be held, as between the two purchasers at least, to have bought it primarily charged for them. And this is not only good logic but also good common sense ; for otherwise, the owner of an estate charged for taxes might sell a part of it, retaining more than enough to pay the taxes, thus apparently relieving the part sold, and yet afterwards, by selling the residue, not only defeat the manifest intent of the statute, but also disappoint the just expectations of the first purchaser. Morever, this view is in consonance with the rule of equity in regard to estates under mortgage. That rule is, that if a mortgagor sells a part of the mortgaged estate, the part retained by him shall first be resorted to for the payment of the mortgage debt ; and if he sells the whole estate to different persons at different times, the parts successively sold shall be resorted to in the inverse order of their alienation. The reason for the rule is that as between the mortgagor and the first purchaser, it is simple equity that the part retained by the mortgagor should be first resorted to, and subsequent purchasers, supposing they have notice either actual or constructive of the prior sales, as a matter of equity simply step into the shoes of the mortgagor and take the estate as he held it, primarily liable for the debt in the inverse order of their purchases. Jones on Mortgages, §§ 1092, 1620, 1621. There is little room for doubt that it was the purpose of the proviso to § 7 to make this rule the rule to be applied in the enforcement of the lien for taxes, if indeed, independently of the proviso, it is not the rule which would have been enforced, either directly or indirectly, in equity.          *Demurrer sustained.*

*William P. Sheffield & William P. Sheffield, Jun.*, for complainant.

*Samuel R. Honey*, for the respondent.